# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FRANK BENEDETTI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-18-614-R |
| | ) |
| SCHLUMBERGER TECHNOLOGY | ) |
| CORPORATION, ET AL. | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff Frank Benedetti was employed by Defendant Schlumberger Technology Corporation ("Schlumberger") and as a result of an on-the-job injury he sought short-term and long-term disability benefits. He filed this action against Schlumberger, The Schlumberger Group Welfare Benefits Plan, and the Administrative Committee of the Schlumberger Group Welfare Benefits Plan pursuant to the Employee Retirement Income Security Act ("ERISA") asserting that pursuant to the terms of the Schlumberger Plan he was entitled to both types of benefits, which were improperly denied, either explicitly or implicitly because no decision was ever tendered. Plaintiff further contends that Defendant Schlumberger retaliated against him for the exercise of his rights under the Plan by threatening to terminate him if he filed for long-term disability benefits. The matter is currently before the Court on Defendants' Motion for Summary Judgment on the Merits (Doc. No. 22). Plaintiff responded in opposition to the motion (Doc. No. 24) and Defendants filed a Reply in support of their position. (Doc. No. 25). The Court conducted

a hearing with counsel and upon consideration of the parties' filings and the hearing the Court finds as follows.

The Court finds it necessary to set forth the unique procedural posture of this ERISA case, as motions for summary judgment are not typical in the ERISA context. Rather, and as was contemplated herein, after submission of the administrative record a plaintiff may seek discovery and to supplement the record. Thereafter, the plaintiff normally files an opening brief on the merits to which the defendant responds and plaintiff replies. To that end, the Court ordered the parties to present an agreed scheduling order, which they did, setting forth the following deadlines: (1) October 19, 2018, Defendants to provide Plaintiff with the administrative record; (2) November 23, 2018, Plaintiff's deadline for seeking discovery;[1] (3) January 4, 2019, Plaintiff's deadline to seek to supplement the administrative record; (4) February 8, 2019, Plaintiff to file brief on the merits; (5) March 8, 2019, Defendants' response brief due; and (6) March 22, 2019, Plaintiff to file his reply.[2] (Doc. No. 16).

Despite clearly established deadlines, Plaintiff failed to seek discovery or expansion of the record. Furthermore, he did not file his opening brief. Rather, on March 8, 2019, when no brief had been filed by Plaintiff, Defendant filed the instant motion. Although ordinarily this failure might cause the Court to limit or preclude Plaintiff from pursuing

---

[1] ERISA cases are ordinarily determined on the basis of the administrative record, the materials compiled by the administrator at the time it made its decision, without traditional discovery when, as here, the Plan gives the claim fiduciary discretion to interpret the Plan. *See Sandoval v. Aetna Life and Cas. Ins. Co.,* 967 F.2d 377, 380 (10th Cir. 1992). The Court's initial scheduling order gave Plaintiff the opportunity to argue for *de novo* review and discovery in support of his claims.

[2] The briefing deadlines were subject to modification if the Court ordered discovery or supplementation of the record. (Doc. No. 16).

certain avenues of relief, the underlying factual scenario of this case, which itself involves missteps, this time by Defendants, leaves Plaintiff with a certain amount of wiggle room on certain of his ERISA claims.[3] With that caveat in mind, the Court turns to the underlying facts.

Plaintiff Frank Benedetti alleges he suffered an on-the-job injury on December 9, 2013, which resulted in his absence from work at Schlumberger from that date until March 3, 2014. Although he returned to work Plaintiff allegedly found himself unable to perform the functions required for his position. Accordingly, Mr. Benedetti submitted his resignation on December 3, 2014.[4] Thereafter, in 2015, premised on his December 2013 injury, Plaintiff sought short term disability benefits via the Plan established by Schlumberger, which both sponsored and funded the Plan. He submitted his application to MetLife, which at the time had a contract to serve as the Plan's claims administrator.

On September 28, 2015, MetLife issued its first denial on Plaintiff's application for short term disability benefits. (Doc.No. 22-1, p. 6) The letter reflected that such benefits ended when employment ended and that because Plaintiff ceased employment with Schlumberger on December 3, 2014, he was ineligible for short term disability benefits. The denial letter informed Plaintiff of his right to appeal, a right Plaintiff exercised by filing an appeal on October 17, 2015. According to the notes from the claims file, Plaintiff's appeal indicated the following:

---

[3] The Court notes that Defendant provided only excerpts of the administrative record to the Court. Ultimately this shortcoming is irrelevant as will become apparent herein.
[4] He argues he was constructively discharged because Defendant threatened to terminate his employment if he filed for long term disability benefits. Plaintiff quit in anticipation of his application for benefits.

> I suffered my injuries 12/9/13 while employed and covered by Schlumberger[.] MetLife has turned a medical catastrophe into a traumatic personal financial disaster, Schlumberger coerced me back to work or face termination with my retirement savings depleted. I was still being treated for my back injury and was not released to RTW[.] I am still suffering constant back pain and paralysis in my legs, erectile dysfunction, bowel control problems. I had to quit my job as I was not allowed recovery from my injuries of 12/9/13 (not sure if 2013) is a typo or the actual date of injury??).

(Doc.No. 22-1, p. 2).

On appeal, MetLife reversed its prior decision on Plaintiff's clarification that his benefits claim was premised on his December 2013 injuries, while he was still an employee, stating in a January 13, 2016 letter:

> Please be advised a thorough review of your claim was completed by the MetLife Disability Appeals department. It has been determined that the previous claims decision will be reversed and your benefits will be reinstated. The file has been returned to the claims team to adjust your STD claim accordingly. Any benefits due will be sent under separate cover. The case manager will notify you of any further developments regarding your claim.

*Id.* p. 10. Almost a month later, in a February 8, 2016 letter, MetLife informed Plaintiff of the following:

> We have completed our review of your claim for benefits and approved your claim from December 10, 2013 through March 2, 2014.
>
> Since our records reflect you returned to work on March 3, 2014, no additional benefits are payable beyond March 2, 2014 and your claim has been closed.
> \*\*\*
> You will receive your disability benefit payment directly from your employer.
>
> Your STD benefits are generally reduced by the amount of any other benefits you receive. This may include but is not limited to . . . Workers' Compensation. . . .

*Id.* at p. 11.

With the exception of the September 26, 2015 letter denying benefits, none of the letters addressed Mr. Benedetti's right to appeal the benefits determination until a February 29, 2016 letter from MetLife essentially reversed the position it espoused in its January 13 and February 8 letters.

> I am writing with respect to your claim for Short-Term Disability ("STD") benefits under your employer's Plan. MetLife wants to clarify the amount of benefits you are due as a result of MetLife's appeal decision communicated to you on January 13, 2016 and to explain the impact of your resignation on your continued entitlement to benefits. As outlined below, MetLife did determine on appeal that the medical information you provided satisfied the Plan's definition of disability for the period between December 10, 2013 and December 8, 2014, the last day of your employment due to your resignation. However, MetLife has determined that you have already received the full amount of Plan benefits you are entitled to for that period of time and that you are entitled to no benefits after your resignation as further explained below.

*Id.* at p. 13. The letter set forth the Plan provisions for the payment of benefits, 100% of base pay for the first twenty-six weeks and 60% for the next twenty-six weeks if the employee remained disabled, with multipliers for certain positions. The letter noted the workers' compensation offset, adding the following conclusion:

> Schlumberger has confirmed that from December 10, 2013 through March 2, 2014 you were subject to the Base Pay multiplier, resulting in a payment due of 130% of your Base Pay. Schlumberger has further confirmed that, for the period December 10, 2013 through March 2, 2014, you were paid this full amount reduced by the amount you were receiving as Workers' Compensation payments. Therefore, we have determined that no further disability payments are due for this period.
>
> You returned to work on March 3, 2014, and received your full salary through December 8, 2014, your last day of employment due to your resignation from Schlumberger. While MetLife's appeal review determined that you satisfied the Plan's definition of disability during this period, you are not due any Plan benefits for this period because the Plan's offset for the

5

"compensation that you received for work performed" (your full salary) reduced the benefit amount owed under the Plan to zero.

*Id.* at p. 14. Unlike the two prior letters, the February 29, 2016 letter informed Plaintiff of a right to appeal by filing a written request with MetLife within 180 days after receipt of "this denial letter." *Id.*

On Friday August 26, 2016, within the 180-day period, Plaintiff's counsel sent a letter to MetLife purporting to appeal the adverse determination set forth in the February 29, 2016 letter and asserting for the first time a claim for long term disability benefits under the Schlumberger Plan. Unbeknownst to Plaintiff or his attorney, however, on July 1, 2016, Defendant Schlumberger had switched its Plan Administrator from MetLife to Cigna. Plaintiff only became aware of the switch on November 9, 2016, when he received a letter from MetLife conveying this information. The November 9, 2016 correspondence was the fourth letter sent to Plaintiff's counsel by MetLife after the appeal. In the first two MetLife indicated it needed additional time to adjudicate the appeal. (Doc. No. 22-1, pp. 20, 21). In the third letter, dated October 26, 2016, MetLife indicated that Schlumberger was responsible for calculating benefits for the STD plan and indicating that the long-term disability claim would be addressed separately. (Doc. No. 22-1, p. 22). Finally, on November 9, 2019, MetLife wrote its final communication to Plaintiff's counsel, stating:

> This letter will supplement our October 26, 2016 response to your August 16, 2016 correspondence, and responds to your request in submitting a claim for Long Term Disability benefits.
>
> ***
> Effective July 1, 2016, MetLife is no longer the claim administrator for the LTD Plan. The new Claim Administrator, Cigna, will adjudicate Mr. Benedetti's claim for benefits under the LTD Plan. We forwarded Mr.

6

> Benedetti's Short-Term Disability ("STD") claim file to Cigna. Future inquiries concerning Mr. Benedetti's claim for benefits under the LTD plan should be directed to Cigna. . . .

*Id.* at p. 23. Neither Plaintiff nor his counsel had additional communication from MetLife or the Schlumberger Defendants on the issue and there was never any communication from Cigna.

Thereafter Plaintiff filed this action under the Employee Retirement Income Security Act ("ERISA") seeking an award of benefits and relief against Schlumberger on a theory of constructive discharge. Plaintiff argued for the application of a *de novo* standard of review, arguing that his claims for both short- and long-term disability should be deemed denied because the plan administrator never rendered a decision on his short-term disability appeal or any decision on his claim for long-term disability benefits. Plaintiff also asserted that he should be able to expand the administrative record via discovery because of the procedural irregularities herein.[5]

As noted above, the parties failed to submit the complete administrative record; Defendants provided what they deemed were necessary excerpts. Failing to provide entire administrative record contemplates less than even arbitrary and capricious review, because the Court is unable to identify any other relevant evidence presented to the administrator. Although the Court could order the parties to submit the entirety of the administrative record, the Court finds this is not necessary in light of its conclusion that the matter should be remanded for appropriate consideration in light of procedural irregularities that resulted

---

[5] As noted above Plaintiff was provided a method for seeking discovery and supplementation of the record and chose to forego the opportunities provided by the Court's scheduling order.

in a failure to provide Mr. Benedetti with a full and fair opportunity for review. With regard to Plaintiff's constructive discharge claim, the Court finds that Defendant is entitled to summary judgment.

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), allows the beneficiary of an ERISA plan to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id*. The Court generally employs a *de novo* standard of review to evaluate a claim under ERISA unless the policy documents contain language that grants the plan fiduciary discretion to interpret the terms of the plan and to determine eligibility for benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). Here, the parties do not dispute that the Plan administered contains language granting this discretion to the administrator. (Doc. No. 22-1, p. 32, 35). Accordingly, the court ordinarily would review Defendant's eligibility determination under the more deferential abuse of discretion standard. *See, e.g., DeGrado v. Jefferson Pilot Fin. Ins. Co*., 451 F.3d 1161, 1167 (10th Cir. 2006). Under this standard, the court's review is limited to "determining whether the ... interpretation [of the plan] was reasonable and made in good faith." *Hickman v. Gem Ins. Co.,* 299 F.3d 1208 (10th Cir. 2002). The Court finds, however, that the procedural irregularities of this case warrant remand of the § 1132(a)(1)(B) claims to the plan administrator so that Plaintiff can pursue his appeal of his short-term disability claim and for adjudication of his long-term disability claim. *But see Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003).

Defendants argue that Plaintiff received a full and fair review of his short-term disability claim and that the August 26, 2016 letter was a second voluntary review as contemplated by the Plan. Such review was not necessary to exhaust Plan remedies; rather, Defendant argues, Plaintiff could have pursued suit after he received the February 29, 2016 letter. Defendant also argues that the August 26, 2016 letter was not a properly filed Second Voluntary Appeal because according to the terms of the Plan such an appeal was to be made to the Plan Administrator, here The Administrative Committee of the Schlumberger Group Welfare Benefits Plan, not the claims administrator, regardless of who was occupying that role in August 2016.

Given the language of the February 29, 2016 letter from MetLife to Plaintiff indicating that he had the right to appeal and that his appeal should be filed with MetLife, the Court disagrees with Defendants' contention that the August 26, 2016 letter from Plaintiff's counsel was a second voluntary appeal. First, the letter specifically informed Plaintiff, "[i]n the event your appeal is denied on whole or in part, you will have the right to bring a civil action under Section 502(a) of" ERISA." (Doc. No. 22-1, p. 14). This language is consistent with the language in the September 26, 2015 initial denial of Plaintiff's claim for short-term benefits. If indeed the February 29, 2016 letter was intended to resolve an appeal, it improperly conveyed information to Plaintiff that differs from the Summary Plan Description, which indicates a second voluntary appeal is to the Plan Administrator while the letter specifically indicates that in an appeal "MetLife will evaluate all of the information and advise you of our determination." (Doc.No. 221-1, p. 14). Additionally, if the appeal referenced in the letter was voluntary, the Court would anticipate

9

that MetLife would have conveyed the voluntary nature thereof and would indicate that no additional appeal was necessary before suit could be filed. The appeal provision quoted above indicates that litigation can follow denial of the appeal, not that Mr. Benedetti could proceed without this step.[6]

With regard to Plaintiff's claim for long term disability benefits, it is apparent that his claim was never adjudicated by a claims administrator on behalf of Schlumberger. The letter MetLife sent to Plaintiff in which it finally acknowledged it was no longer the claims administrator indicates that the long-term disability claim would be forwarded to Cigna and can be interpreted as advising Mr. Benedetti that Cigna would render a decision on the claim, which did not occur. Accordingly, there is no decision on Plaintiff's long-term disability benefits that this Court could review.

"This court has on several occasions reviewed a benefits denial de novo, notwithstanding the fact that the Plan afforded the administrator discretion to make benefits determinations, where there were procedural irregularities in the administrator's consideration of the benefits claim." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 797 (10th Cir. 2010). The Tenth Circuit has also noted that, "in the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of

---

[6] This interpretation is reasonable in light of the nature of MetLife's final communication. Although MetLife had previously indicated that Plaintiff was approved for short term disability benefits his victory ultimately proved hollow when MetLife informed him that he would receive no actual benefits despite having established that he was disabled under the short-term disability provisions.

10

the deadlines or other procedural irregularities would not entitle the claimant to *de novo* review." *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635(10th Cir. 2003).

This case, however, does not fit squarely into either of the above categories and more resembles the recent Tenth Circuit case of *Messick v. McKesson Corp.*, 640 F. App'x 796 (10th Cir. Feb. 17, 2016). In *Messick*, the plan administrator misaddressed the letter denying the first level appeal for short-term benefits, which was not received by counsel or the claimant. Believing the first-level short term disability claim was deemed denied by virtue of the passage of time without a decision from the administrator, the claimant filed suit. The Tenth Circuit concluded that remand was appropriate, because "LINA's failure to properly address its denial letter cut off the administrative process midstream. Messick never filed a second-level appeal because he was never informed of the first-level denial. We accordingly lack a complete administrative record to review." *Id.* at 798.

> Our case law has long recognized the importance of completing the administrative review process before filing suit. "[P]remature judicial interference with the interpretation of a plan would impede those internal processes which result in a completed record of decision making for a court to review." *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir.1998). And ERISA contemplates "an ongoing, good faith exchange of information between the administrator and the claimant." *Gilbertson*, 328 F.3d at 635. These interests are not served by federal court review of an incomplete administrative record.

*Id.* at 798–99 (footnote omitted).

Defendants also seek summary judgment on Plaintiff's breach of fiduciary duty claim, asserting that, because Plaintiff seeks benefits under the short-term disability and long-term disability policies, the equitable relief provided by § 502(a)(3) is inapplicable herein. In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court affirmed the

11

district court's grant of judgment on a breach of fiduciary duty and granted equitable relief, specifically reinstatement of the employees to the prior pension plan, when they had been deceived into voluntarily withdrawing from the plan and forfeiting benefits. *Varity* and subsequent cases preclude simultaneous claims under § 502(a)(1)(B) and breach of fiduciary duty claims under § 502(a)(3), when the § 502(a)(3) claims are merely ordinary benefit claims "dressed up" in fiduciary clothing. *Id.* at 514.[7]

The Court declines at this juncture to consider Plaintiff's breach of fiduciary duty claim in light of the remand set forth above. To the extent Plaintiff alleges that Defendants breached their fiduciary duty by wrongfully denying his benefits, such a claim fits squarely within § 1132(a)(1). Therefore, if the allegations are true and Mr. Benedetti is entitled to benefits, § 1132(a)(1) would presumably offer a complete remedy, meaning relief under the equitable catch-all provision would not be appropriate. However, given the unusual nature of this case, the Court declines to speculate that Plaintiff could not, under any circumstances, prevail on a claim for equitable relief for breach of fiduciary duty while not prevailing on his claim for the wrongful denial of benefits.

Finally, the Court finds that the issue of Plaintiff's alleged constructive discharge can be assessed at this stage and on the current record in large part because Plaintiff allowed his opportunities to seek discovery to expire without taking action.[8] Section 510 of ERISA

---

[7] In *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), the employer altered the terms of its pension plan without notifying employees as required by ERISA. The Supreme Court held that § 502(a)(1)(B) permits only enforcement of the terms of the Plan, not alteration thereof. The Court, however, ruled that reformation under § 502(a)(3) was a potential remedy available to the employee class and that a "make-whole" remedy, including a monetary award, may nevertheless be equitable.

[8] In response to the Brief on the Merits and Motion for Summary Judgment Plaintiff argues that he is entitled to discovery and a bench trial. (Doc.No. 24, p. 21). Plaintiff was granted the opportunity to seek discovery and chose not to do so and cannot now be heard to complain about the lack of opportunity.

makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Here Plaintiff does not allege or provide evidence that he engaged in any activity protected under § 1140, nor does he allege that he was terminated so that Defendant could prevent his eligibility. Rather, he asserts that he was threatened with reprisal if he filed for long term disability, and that as a result, he quit his employment. The Court finds that the alleged threat of reprisal without Plaintiff being terminated by Defendant does not support an interference claim. In any event, there is no evidence of such threats in the record, given that the record before the Court is limited to the pages provided by Defendants.

For the reasons set forth herein, Plaintiff's claims under section 502(a)(1) are hereby remanded for further consideration. Plaintiff's claim under § 502(a)(3) for breach of fiduciary duty is hereby held in abeyance pending the outcome of the remand proceedings. Defendant is granted summary judgment on Plaintiff's claim for interference under § 510. The Court will administratively close this action pending the termination of remand proceedings. The parties are to inform the Court within sixty days of the termination of such proceedings and the result thereof.

**IT IS SO ORDERED** this 6th day of January 2020.

_____
**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**